1
2
3
4
5
6
7
8
9        **UNITED STATES DISTRICT COURT**

10       **SOUTHERN DISTRICT OF CALIFORNIA**

11   UNITED STATES OF AMERICA,           CRIM CASE NO. 10cr2920WQH
                                         CIVIL CASE NO. 13cv3176WQH
12                          Plaintiff,
                                         **ORDER**
         vs.
13
     JUAN CARLOS FLORES-ACUNA,
14
                            Defendant.

15   HAYES, Judge:

16          The matter before the Court is the motion to vacate, correct or set aside sentence

17   by a person in federal custody pursuant to 28 U.S.C. § 2255 filed by Defendant Juan

18   Carlos Flores-Acuna.  (ECF No. 96).

19                           **BACKGROUND FACTS**

20          On June 25, 2010, Defendant was arrested  at the Otay Mesa Port of Entry while

21   attempting to enter the United States from Mexico in a Chevrolet Silverado truck.

22   Border Patrol Agents referred Defendant to secondary inspection.   At secondary

23   inspection, a detector dog alerted to the passenger side of the vehicle.   Subsequent

24   investigation revealed 3.564 kilograms of methamphetamine concealed within a non-

25   factory compartment in the vehicle.

26          On July 21, 2010, the grand jury returned a two-count indictment charging the

27   Defendant with importation of methamphetamine in violation of 21 U.S.C. §§ 952 and

28   960, and possession of methamphetamine with intent to distribute in violation of 21

- 1 -

1  U.S.C. § 841(a)(1).  (ECF No. 9).  Defendant entered a plea of not guilty.

2         On December 15, 2010, the jury trial commenced.  Victor Torres represented the

3  Defendant at trial.  After the Government's case-in-chief, Defendant testified that he did

4  not have knowledge of the methamphetamine concealed within the Chevrolet Silverado

5  truck.  Defendant testified that he purchased the truck from a neighbor Martinez, but did

6  not have the money for an outright purchase.  Defendant testified that his neighbor

7  would periodically allow him to borrow the truck while he was making payments.

8         On December 17,  2010, the jury found Defendant guilty of both charges in the

9  indictment.  (ECF No. 43)

10        On February 22, 2011, the Court granted Defendant's request for new counsel

11  and appointed Holly A. Sullivan to represent Defendant. (ECF No. 51).  Defendant's

12  sentencing date was continued.  (ECF No. 52).

13        On June 27, 2011, a psychological evaluation of the Defendant was performed

14  by Dr. Bruce Yanofsky.  Dr. Yanofsky noted in the report that "it was immediately

15  noticeable from his presentation that [Defendant] presents with limitations associated

16  with his lack of education and illiteracy."  (Report at 3).  The evaluation detailed

17  Defendant's personal history and background, academic history, occupational history,

18  family and social functioning, criminal history, psychiatric history, medical history, and

19  substance abuse history.  In the Mental Status Examination, Dr. Yanofsky found

20  Defendant's intellectual abilities to be "within the below average range based on testing,

21  his verbal production, academic and work histories."  *Id*. at 11.  In his Summary of

22  Findings and Conclusions, Dr. Yanofsky stated in part:

23         Psychological test results derived for the present evaluation indicate that
           Mr. Flores-Acuna is an individual with limited intellectual resources.
24         Even when considering his lack of education, some cognitive functions
           appear to be below expectation.  In this regard, an examination of his
25         adaptive functioning reveals that in most areas of life he was able to
           participate with relative success as long as the activity did not require
26         reading or writing.  This distinction is brought up given the fact that the
           low test results on the WAIS-III would suggest that his intellectual
27         functioning falls within the Mentally Retarded range.  Nonetheless, in
           reviewing other aspects of Mr. Flores-Acuna's life, the question remains
28         as to the exact nature of his intellectual abilities, and whether or not his
           functional skills match those of mental retardation.  Even if ultimately it

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> is determined that mental retardation is present, he is no doubt within the mild range, given his known history.... In this case, as noted, it is difficult to fully estimate the actual IQ score for Mr. Flores-Acuna in light is the limitations of the testing instruments and his low education which, as noted, will negatively impact the actual scores. However, intellectual skills and abilities may remain in spite of low educational opportunities.

*Id.* at 16. Dr. Yanofsky concluded that there was no indication that the Defendant was suffering from a severe mental health problem and recommended vocational and academic instruction in order to improve the Defendant's functional abilities and independence.

On July 12, 2011, Defendant moved for a new trial based on newly discovered evidence. Defendant contended that his due process rights were violated because the jury was not able to consider Dr. Yanofsky's psychological evaluation when determining whether the defendant knowingly imported the methamphetamine, or his act was the result of ignorance, mistake, or accident.

On August 15, 2011, the Court denied Defendant's motion for new trial. The Court concluded that a new trial was not warranted based on the post-trial psychological evaluation. The Court found that nothing prevented trial counsel from obtaining a mental evaluation prior to trial and that the psychological evaluation was not evidence that demonstrated that a new trial would probably result in acquittal. (ECF No. 76).

On October 24, 2011, the Court sentenced Defendant to 168 months imprisonment on each count concurrently, followed by 5 years of supervised release. (ECF No. 86).

On October 26, 2011, Defendant appealed his conviction to the United States Court of Appeals for the Ninth Circuit. On December 19, 2012, the Court of Appeals affirmed the conviction. The Court of Appeals held that the district court did not abuse its discretion in denying Defendant's motion for new trial because "nothing prevented defense counsel from requesting such an evaluation before trial, and the psychiatric evaluation was not evidence which would show that a new trial would probably result in acquittal." (ECF No. 95).

On December 29, 2013, Defendant filed a motion to vacate, correct, or set aside

1  sentence pursuant to 28 U.S.C. § 2255 based on ineffective assistance of counsel.  (ECF
2  No. 96).  Defendant contends that the failure to investigate Defendant's intellectual
3  capability by his trial counsel, and the decision to permit the Defendant to testify on his
4  own behalf by trial counsel, constituted ineffective assistance of counsel.  *Id*. at 4.
5  Defendant requests that the Court vacate his sentence or, in the alternative, that the
6  Court conduct an evidentiary hearing on the ineffective assistance of counsel claim.

7       On May 1, 2014, Attorney Torres filed a declaration under penalty of perjury
8  stating in part that he met with Defendant on eight occasions for approximately nine
9  hours during his pre-trial representation, that Defendant's explanations and responses
10 indicated that he understood the charges against him, and that nothing indicated to him
11 that Defendant was incapable of assisting in his own defense or testifying on his own
12 behalf.  Attorney Torres stated that he "never had reason to believe that [Defendant]
13 was incapable of understanding the charges against him... nor... capable of assisting in
14 his own defense."  (ECF No. 109 at 3).

15      Attorney Torres stated:

16      I believed that he was a unsophisticated man lacking formal education.
        But I also knew that he possessed a California drivers license and had
17      operated a small business.  In preparation for trial, my investigator visited
        Mr. Flores-Acuna's home in Mexico and took many detailed photographs.
18      My investigator and I spoke with his family about his personal
        characteristics, his lifestyle, the business he ran, and the events leading up
19      to his arrest.  As an experienced criminal defense attorney, I strategically
        incorporated those factors into the theme and defense that I presented to
20      the jury on behalf of Mr. Flores-Acuna.

21 *Id.*  Attorney Torres stated that throughout the trial, he discussed the arguments, the
22 evidence, and the strategy with Defendant; and that he "never had reason to believe that
23 Mr. Flores-Acuna was not capable of assisting in his own defense."   *Id.*   Attorney
24 Torres stated:

25      Prior to Mr. Flores-Acuna's testimony, I discussed with him the possible
        benefits and risks of testifying. ...
26      When Mr. Flores-Acuna chose to testify, I believed that it was in his best
        interests because the evidence presented by the United States in its case-in-
27      chief was sufficiently strong to overcome a Rule 29 motion.  Without the
        testimony of Mr. Flores-Acuna, it would have been much more
28      challenging for the defense to defend/explain/create reasonable doubt as
        to how Mr. Flores-Acuna had ended up being the driver, sole-occupant,

and registered owner of a vehicle that contained such a significant amount of methamphetamine without knowing the drugs were present. Mr. Flores-Acuna was also the only person that could directly explain and contradict the behaviors that the Customs and Border Protection Officers testified were consistent with nervousness.

*Id.* at 4.

On May 9, 2014, Plaintiff filed its Response in Opposition to the Defendant's motion to vacate his sentence.

On May 23, 2014, Defendant filed a traverse. Defendant submitted an additional Declaration of Victor Torres. Attorney Torres stated that he believed Defendant had a "low IQ but didn't appreciate that it could fall to the level of mental retardation without a psychiatric evaluation." (ECF No. 111-1 at 2). Attorney Torres stated in part:

If I had known he was in a mentally retarded range of intelligence I would likely have advised him not to testify at trial. If he chose to testify anyway, I would have presented information concerning his mental deficits.

If I had known he was in a mentally retarded range of intelligence I would have changed my trial strategy and presented evidence of his lower intellectual ability and argued his vulnerable state due to his mental deficits made him an ideal candidate to be used by other as a 'blind mule.'

*Id.*

## CONTENTIONS OF PARTIES

Defendant moves the Court to vacate, set aside or correct his sentence on the ground that he was denied effective assistance of counsel. Defendant contends that his trial counsel failed to investigate his intellectual capability. Defendant asserts that the findings in the psychological examination would have allowed defense counsel to argue that he lacked the intellectual capacity to devise a plan to smuggle drugs. Defendant contends that "[t][here was no strategic reason for his attorney having failed to investigate and have evaluated Mr. Flores' intellectual capacity. Given the centrality of Mr. Flores' testimony, it is reasonably probable that had the jury been aware of Mr. Flores' mental retardation Mr. Flores' trial would have ended differently." (ECF No. 96 at 15). Defendant contends that trial counsel's failure to investigate the level of his intellectual functioning resulted in the prejudicial decision to testify in his own behalf. Defendant contends that he was denied his Sixth Amendment right to effective

assistance of counsel and that he is entitled to a new trial.

Plaintiff United States contends that the Defendant has not stated a valid claim of ineffective assistance of counsel.  Plaintiff contends that Defendant's trial counsel acted within the reasonable professional assistance required by the Sixth Amendment. Plaintiff contends that trial counsel was an experienced criminal attorney with a history of representing defendants accused of importing narcotics, and adequately investigated his client's mental capacity.  Plaintiff contends that the evidence against the Defendant was overwhelming and the psychological evaluation was not evidence which would show that a new trial would probably produce a different result.

## APPLICABLE LAW

28 U.S.C. § 2255 provides:

> A prisoner under sentence of a court established by Act of Congress claiming the right to be released upon ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of facts and conclusions of law with respect thereto.  If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

28 U.S.C. § 2255(a) and (b).

## RULING OF THE COURT

In order to prevail on a claim on ineffective assistance of counsel, the Defendant must show that counsel's representation fell below an objective standard of reasonableness, and that counsel's deficient performance resulted in prejudice to the

defendant.  *Strickland v. Washington*, 466 U.S. 688, 689 (1984).  Both deficient performance and prejudice are required before it can be said that a conviction or sentence resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable and thus in violation of the Sixth Amendment.  *Id. see also United States v. Thomas*, 417 F.3d 1053, 1056 (9th Cir. 2005).

**Objective Standard of Reasonableness**

In order to establish that counsel's representation fell below an objective standard of reasonableness, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  Petitioner must identify "material, specific errors and omissions that fall outside the wide range of professionally competent assistance." *United States v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991).  When making this determination, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 469.  The Court applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id.* at 689.  When a court is assessing an attorney's performance, "every effort must be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.  If Petitioner's ineffective assistance of counsel claim is based on actions or investigations not undertaken by counsel, Petitioner must show that there was no strategic reason for the omitted actions.  *Id*. at 691.  However "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 691.

In this case, the record establishes that Torres spent approximately nine hours with Defendant over the course of eight meetings.  The record establishes that Torres investigated Petitioner's background and characteristics.  Attorney Torres had his

investigator travel to Defendant's home in Mexico to take detailed photographs. Attorney Torres spoke with Defendant's family about his personal characteristics, his lifestyle, the business he ran, and the events leading up to Defendant's arrest. Attorney Torres was aware that Defendant had a drivers license, that Defendant operated a small business, that Defendant was married with children, and that the Defendant had crossed the border on numerous occasions. Attorney Torres evaluated Defendant's mental capacity and concluded that Defendant was able to fully comprehend and follow the proceedings against him. During trial, defense counsel discussed the arguments, the evidence presented and the strategy with Defendant. Prior to Defendant's testimony, defense counsel discussed the possible benefits and risks of testifying with the Defendant, and had no reason to believe that Defendant did not understand. These facts are uncontradicted in the record of this case and demonstrate that defense counsel did not act unreasonably in determining that it was not necessary to further investigate the Defendant's mental capacity.

"[I]n order to determine whether defense counsel performed below the level expected from a reasonably competent attorney, it is necessary to 'judge counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" *A.L. Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). After investigation, Attorney Torres believed that Defendant was an unsophisticated man with a low IQ, lacking formal education. With the benefit of hindsight and the subsequent mental evaluation, Attorney Torres opined that he would have changed his defense strategy if he had known that Defendant "was in a mentally retarded range of intelligence." (ECF No. 111-1 at 2). However, the evidence in the record is uncontradicted that Attorney Torres never had reason to believe that Defendant was incapable of understanding the charges against him or capable of assisting in his own defense, that Attorney Torres investigated the Defendant's background and the facts leading to his arrest and incorporated those facts into the defense presented the jury, and that Attorney Torres discussed with Defendant the

possible benefits and risks of testifying and believed that it was in his best interests when Defendant chose to testify at his trial.

In this case, there is no claim that the mental evaluation was required in order to determine whether the Defendant was "suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. §4241. The subsequent report of Dr. Yanofsky does not conclude that the Defendant suffered from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Nothing in Dr. Yanofsky's evaluation renders trial counsel's professional judgment not to further investigate Defendant's mental capacity outside the wide range of reasonable professional assistance guaranteed by the Sixth Amendment. The Court finds that Defendant's trial counsel acted within the "wide range of reasonable representation" required under the Sixth Amendment. *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1986).

**Prejudice**

To prevail on the prejudice prong of a claim of ineffective assistance of counsel, the defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In making this determination, the Court "must consider the totality of the evidence before the judge or jury." *Id*. at 695.

In this case, the Government presented evidence showing the Defendant was the registered owner and driver of the truck, that the Defendant's truck contained methamphetamine within a non-factory compartment secured by bolts, and that the socket wrench that fit the bolts perfectly was found in the passenger side door. The Government presented evidence that Defendant was extremely nervous upon arriving

at the port of entry, and that the officers at the port of entry noticed freshly tooled bolts on the truck, and that the officers smelled fresh paint and bondo. The Government presented evidence that two cell phones were seized from the Defendant, and that one of the phones was a Boost mobile phone accompanied by a slip of paper with a phone number, pin code and radio number handwritten on the paper. The Government presented evidence that Defendant made a phone call minutes before arriving at the port of entry on the Boost mobile phone that was not registered to him. The Government presented evidence that the other phone had over fifty contacts and personal photographs on the phone and that the Boost mobile phone had only five contacts. The Government offered into evidence the Department of  Motor Vehicle registration documents showing Defendant was the registered owner of the truck and a car insurance application for the truck in the name of the Defendant.

Defendant called five witnesses. Four family members testified regarding the residences that Defendant maintained in Tijuana and the address he used to receive mail in the United States. Defendant's sister testified that she was a resident of San Diego and that her address appeared on the registration for the truck. Defendant's sister testified that Defendant stayed at her home frequently and used her address to receive mail. Other family members testified that they had seen another man with Defendant's truck and identified one of the cellular phones (not the Boost mobile phone) as Defendant's phone.

Defendant testified about his employment and his decision to purchase the truck from a man named Martinez. Defendant testified that he had a detailed purchase agreement with Martinez and that he borrowed the truck when he wanted to cross into the United States to pursue day labor in San Diego. Defendant testified that he had not attended school and could not read or write. Defendant testified that he had acquired the Boost mobile phone at a swap meet and stated that the socket wrench found in the passenger side of the truck did not belong to him. Defendant testified that he had entered into a Purchase Agreement in June 2009 with Martinez regarding the purchase

of the truck which stated the license plate number of the truck. In rebuttal, the Government provided certified documents from the Department of Motor Vehicle showing that the license plate number on the Purchase Agreement was not issued to the truck until December 2009.

The Court concludes that the totality of the evidence presented to the jury by the Government in this case was strong. Even if the Court were to assume that trial counsel's decision not to further investigate Defendant's mental capacity fell below an objective standard of reasonableness, there is not a reasonable probability that the result in this case would have been different. *See A.L. Lockhart*, 506 U.S. at 372 (finding that the prejudice component of the *Strickland* test "focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceedings fundamentally unfair"). The subsequent mental evaluation may provide support for the position that the Defendant's trial strategy was not likely to be successful but does not does not provide support for the position that a different trial strategy would have been successful. The Court concludes that the record in this case adequately shows that the Defendant's claim of prejudice does not meet the second prong of the *Strickland* standard.

**Evidentiary Hearing**

An individual filing a claim for federal habeas corpus relief under 28 U.S.C. § 2255 is entitled to an evidentiary hearing "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). This standard requires an evidentiary hearing when "the movant has made specific factual allegations that, if true, state a claim on which relief can be granted." *Id*. The Court has reviewed the record in its entirety and determined that an evidentiary hearing is not warranted. Petitioner has not alleged specific facts that, if true, would entitle him to relief.

## CONCLUSION

IT IS HEREBY ORDERED that the motion to vacate, correct or set aside

conviction pursuant to 28 U.S.C. § 2255 filed by Defendant Juan Carlos Flores-Acuna

is denied.  (ECF No. 96).

DATED:  September 2, 2014

WILLIAM Q. HAYES
United States District Judge

10cr2920WQH